UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| COMMONWEALTH OF MASSACHUSETTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 03-11865-PBS |
| MYLAN, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

July 12, 2010

SARIS, U.S.D.J.

After hearing I **DENY** Warrick's Motion for an Order Deeming Certain Facts Conclusively Established for Purposes of this Case [Docket No. 744].

First, I find that the Commonwealth did not act in bad faith in not producing the open investigative files regarding CVS' refusal to follow the government's Usual and Customary Charge (U&C) regulations.  Apparently, while conferring over the scope of discovery, the parties agreed that the Commonwealth need not produce documents from "open investigations."  The CVS files, which Warrick describes as containing smoking documents, were in open investigation status for twelve years and turned out to be potentially relevant.  In retrospect, the discovery agreement was overbroad, and the Commonwealth should have done a more searching

inquiry as to the content of the investigative files.  Still, I cannot say the lack of production was in bad faith.  See Townsend v. Am. Insulated Panel Co., 174 F.R.D. 1, 4 (D. Mass. 1997) (noting relevance of bad faith in determining sanctions for spoliation); Estate of Spear v. C.I.R., 41 F.3d 103, 109-11 (3d Cir. 1994) (noting the relevance of bad faith in determining sanctions for discovery violations).

Second, I do not find that any intentional or negligent spoliation occurred.  When Mr. Shapiro, who is now deceased, shredded his files upon retirement in 1999, this case was only in the investigatory stage and related primarily to branded drugs.  There was no reasonable foreseeability of litigation regarding the U&Cs for generic drugs.  See West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999) (holding that the duty to preserve evidence does not begin until litigation is pending or reasonably foreseeable).

Finally, defendants correctly point out that the Commonwealth did not produce documents, particularly the CVS documents demanded by Document Requests No. 14 and No. 20 that were in the Commonwealth's files.  While there is no evidence of bad faith, the Commonwealth has not explained its non-production.  These documents should have been produced.  Still, the Commonwealth did not violate a court discovery order, so sanctions under Fed. R. Civ. P. 37 are inappropriate.  See Big Top USA, Inc. v. Wittern Group, 183 F.R.D. 331, 338 (D. Mass.

1998) (quoting R.W. Int'l Corp. v. Welch Foods, Inc., 937 F.2d 11, 15 (1st Cir. 1991)) (noting that Fed. R. Civ. P. 37's "language clearly requires two things as conditions precedent to engaging the gears of the rule's sanction machinery: a court order must be in effect, and then must be violated, before the enumerated sanctions can be imposed."). When defendants asked for a court order, the Court allowed the motion, and permitted additional depositions.

The Commonwealth points out that Warrick had information dating back to 2007 putting it on notice that some pharmacies might have had an agreement with the Commonwealth not to comply with the U&C regulations in 2005, but did not ask deposition witnesses about the issue. In fact, Warrick was on notice to the point that it raised this very argument in its motion for summary judgment. Massachusetts v. Mylan Labs., 608 F. Supp. 2d 127, 146-47 (D. Mass. 2008). Further, as the Court explained in its summary judgment opinion, even if "a verbal agreement existed with MassHealth that MassHealth would not audit generic U&C prices," the pharmacies' "actions did not cut off [False Claims Act] liability for the defendants," whatever the potential relevance of such an agreement might be for the Commonwealth's common law fraud claims. Id. at 147. The Court finds no prejudice from the late production of the documents except with respect to the ability to cross-examine Mr. Shapiro fully, with respect to the newly disclosed documents, although Warrick did

have the opportunity to cross-examine him with respect to the alleged agreement, but chose not to do so.  In these circumstances, where there is no allegation or evidence of bad faith, and little evidence of prejudice, I decline to exercise my inherent power to impose the requested sanction.  See Chambers v. NASCO, Inc., 501 U.S. 32, 50 (1991) (holding that courts have inherent authority to impose sanctions so long as "the requisite bad faith exists"); cf. Big Top USA, 183 F.R.D. at 338 (noting the importance of bad faith and prejudice in determining appropriate sanctions under Rule 37).  However, the Court will consider as a sanction precluding the introduction of certain limited deposition testimony by Mr. Shapiro with respect to the enforcement of the U&C regulation against CVS where the newly disclosed documents would have allowed for cross-examination not enabled by mere notice of the alleged agreement.  I will not determine the scope of this sanction until I see the portions of the deposition transcript which the Commonwealth seeks to introduce.

      /s/ PATTI B. SARIS
      PATTI B. SARIS
      UNITED STATES DISTRICT JUDGE