# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THE COMMONWEALTH OF MASSACHUSETTS,<br><br>            Plaintiff,<br><br>    v.<br><br>MYLAN LABORATORIES, INC., *et al.*<br><br>            Defendants. | Civil Action No. 03-CV-11865-PBS<br><br>**LEAVE TO FILE GRANTED ON FEBRUARY 9, 2011** |

## WARRICK'S SUPPLEMENTAL BRIEF IN FURTHER RESPONSE TO THE COMMONWEALTH'S MOTION FOR ENTRY OF JUDGMENT REGARDING RETROACTIVE APPLICATION OF THE MFCA'S ENHANCED PUNISHMENTS

During oral argument on January 25, the Court's questions focused in part on whether retroactive application of the MFCA's enhanced damages and penalties to conduct predating its enactment would be unconstitutional. In particular, the Court indicated a belief that it could not avoid that constitutional question. As discussed below, Warrick believes that the Court need not reach the constitutional issue, but could instead construe the MFCA as not requiring retroactive application of the enhanced penalties and damages. Numerous courts have observed that the strong presumption against retroactive legislation, which is reflected in the Ex Post Facto Clause and more generally in the Due Process Clause, can be overcome only with an unmistakably clear indication of the legislature's intent. Because the Massachusetts legislature has not stated in unambiguous terms that the enhanced punishments adopted as part of the MFCA should be applied retroactively, the Court can and should construe the statute to impose the enhanced damages and penalties prospectively only.

If the Court does reach the constitutional issue, the Court should conclude, as other district courts recently have held with regard to the federal FCA, that the MFCA's treble damages and statutory penalty provisions are sufficiently punitive that their retroactive application to conduct predating the MFCA's adoption would be unconstitutional.

I.  **RETROACTIVE APPLICATION OF THE MFCA'S INCREASED PENALTIES AND DAMAGES WOULD BE UNCONSTITUTIONAL.**

Although the Commonwealth has contested the point, *see* Pl.'s Reply in Supp. of J. at 18 [Dkt. 955-1] (Jan. 20, 2011), there is no legitimate dispute that the Ex Post Facto Clause prohibits not only laws that retroactively punish conduct that was legal when undertaken, but also legislation that increases the punishment for past acts. It has been clear since the Founding that "[e]very law that *changes the punishment,* and inflicts a *greater punishment,* than the law annexed to the crime, when committed," violates the Ex Post Facto Clause. *Calder* v. *Bull*, 3

2

U.S. (Dall.) 386, 390 (1798) (Chase, J.) (emphases in original); *id.* at 391 (clause forbids laws that "[i]ncrease the punishment" for past acts); *Stewart* v. *Chairman of Massachusetts Parole Bd.*, 35 Mass. App. Ct. 843 (1994) ("A law affects substantive rights and is ex post facto . . . if it . . . increases the punishment for the crime."). In this respect, the Ex Post Facto Clause reflects the more general principle, also found in the Due Process Clause, that retroactive imposition of new or increased liability for past conduct violates fundamental principles of notice and fairness. *See Usery* v. *Turner Elkhorn Mining Co.*, 428 U.S. 1, 17 (1976) ("retrospective aspects of legislation . . . must meet the test of due process"); *Lerner* v. *Gill*, 751 F.2d 450, 456-57 (1st Cir. 1985) ("Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.").[1]

While "[t]he Ex Post Facto Clause, like the Excessive Fines Clause, . . . applies only to punishment," *United States* v. *Philip Morris USA*, 310 F. Supp. 2d 58, 66 (D.C. Cir. 2004), it is well established that the clause is not limited to penalties that are denominated as "criminal" by the legislature. Rather, the Court must determine whether the legislation is "a civil, regulatory measure within the meaning of the case law, or whether it is punitive." *Simmons* v. *Galvin*, 575 F.3d 24, 43 (1st Cir. 2009).

At argument, the Commonwealth urged the Court to apply the seven factors identified in *Kennedy* v. *Mendoza-Martinez*, 372 U.S. 144 (1963), to determine whether the increased

---

[1] The Commonwealth's contention that retroactive application of enhanced penalties offends the Due Process Clause *only* if the defendant can show actual reliance on the previous state of the law, Pl.'s JMOL Opp. at 15 [Dkt. 940] (Nov. 3, 2010), is incorrect. The inquiry considers more broadly "the nature of the public interest which motivated the Legislature to enact the retroactive statute; the nature of the rights affected retroactively; and the extent or scope of the statutory effect or impact." *In re Liquidation of Amer. Mut. Liability Ins. Co.*, 434 Mass. 272, 282 (2001) (quoting *Leibovich* v. *Antonellis*, 410 Mass. 568, 577 (1991)). The MFCA's increased damages multiplier would impose on Warrick retroactive liability in excess of $3 million. Yet the Commonwealth has pointed to *no* legislative policy that would justify such retroactive punishment. Indeed, as discussed below, the only legislative policy appears to have been to ensure that fraud against the Commonwealth did not escape liability altogether due to the repeal of the MFCA's predecessor statute.

multiplier and enhanced statutory penalties of the MFCA were civil or properly regarded as punitive for purposes of the Ex Post Facto Clause. Several courts have already undertaken that precise inquiry in the context of the federal False Claims Act and have concluded that the treble damages and penalties provisions of that act are "punitive in purpose and effect" under *Mendoza-Martinez*. *U.S. ex rel. Baker* v. *Community Health Systems, Inc.*, 709 F. Supp. 2d 1084, 1112 (D.N.M. 2010); *United States ex rel. Sanders* v. *Allison Engine Co.*, 667 F. Supp. 2d 747, 758 (S.D. Ohio 2009). Those courts stressed that at least four of the *Mendoza-Martinez* factors supported their conclusion: "(1) that FCA sanctions have historically been regarded, at least in part, as punitive; (2) that the FCA requires a scienter in that it requires evidence to support an inference of knowing fraud; (3) that sanctions as provided in the civil version of the FCA are intended to deter conduct; and (4) that the sanctions are excessive in relation to the purpose of compensating the Government for its loss, particularly the treble damages provision." *Baker*, 709 F. Supp. 2d at 1112; *Sanders*, 667 F. Supp. 2d at 756-758. In particular, the courts have relied on the Supreme Court's recognition that the "very idea of treble damages [as opposed to only double damages] reveals an intent to punish the past, and to deter future, unlawful conduct." 709 F. Supp. 2d at 1112 n.29 (quoting *Texas Industries, Inc.* v. *Radcliff Materials, Inc.,* 451 U.S. 630, 639 (1981) (cited in *Vermont Agency of Natural Resources* v. *U.S. ex rel. Stevens,* 529 U.S. 765, 785 (2000))); *Sanders*, 667 F. Supp. 2d at 755 (same). Significantly, *Baker* and *Sanders* did not merely find that retroactive application of the statutory amendments that expanded the FCA's coverage would raise serious constitutional questions; the courts specifically held that, due to the punitive nature of the FCA's treble damages and penalties provisions, retroactive application of the amendments "*would violate* the Ex Post Facto clause." *Baker*, 709 F. Supp. 2d at 1112 & n.31 (emphasis added); *Sanders*, 667 F. Supp. 2d at 752 (emphasis added). [2]

---

[2] The single case Warrick found to the contrary, *United States ex rel. Drake* v. *NSI, Inc.*, __ F. Supp. 2d __, 2010

Each of these observations about the FCA applies equally to the MFCA.  Indeed, as Warrick has previously demonstrated, the punishment inflicted by the MFCA is even *more* punitive in character than the FCA, *see* Warrick's JMOL Mem. at 11-12 [Dkt. 937] (Oct. 13, 2010) (noting that the MFCA, wholly apart from the doubling or trebling of damages, provides for compensatory damages, separately compensates for the costs of investigation and recovery, including attorneys fees, and that the Commonwealth will receive prejudgment interest at a 12% rate that more than compensates it for the time value of its loss).  Indeed, the Commonwealth has repeatedly urged the Court to apply the MFCA so as to "punish and deter" future violations of the Act by Warrick and others.  *See* Pl.'s Reply in Supp. of J. at 7-8 (invoking "the Commonwealth's interest in punishing and deterring").

## II.    THE MASSACHUSETTS LEGISLATURE DID NOT INTEND THAT THE MFCA'S INCREASED PENALTIES APPLY RETROACTIVELY.

Courts routinely refuse to interpret statutes in a manner that would retroactively increase a party's liability.  *See Usery*, 428 U.S. at 17-18 (Court would "hesitate to approve the retrospective imposition of liability on any theory of deterrence . . . or blameworthiness"); *Landgraf* v. *USI Film Products*, 511 U.S. 244, 281 (1994) ("[r]etroactive imposition of punitive damages would raise a serious constitutional question" under the Due Process Clause).  In *Louis Vuitton S.A.* v. *Spencer Handbags Corp.*, 765 F.2d 966, 972 (2d Cir. 1985), the Second Circuit recognized that "[r]etroactive application of [a mandatory] treble damages provision" to conduct that was previously subject to treble damages only at the discretion of the court could "present a potential ex post facto problem" and "might also implicate the Due Process Clause of the Fifth Amendment" and therefore construed the statutory amendment only to apply prospectively.

---

WL 3417854 (D. Conn. 2010), stresses the remedial aspects of the FCA's multiple damages, *id.* at *6-8.  That rationale is inapplicable to the MFCA, which fully compensates the Commonwealth before multiplying damages.

Likewise, in *Resolution Trust Corp.* v. *S & K Chevrolet*, 868 F. Supp. 1047 (C.D. Ill. 1994), the court noted that retroactive application of civil RICO's mandatory treble damages provision to conduct previously subject only to common law punitive damages "raises serious constitutional questions under both the Ex Post Facto Clause and the Due Process Clause of the Fifth Amendment." *Id.* at 1063. The court therefore construed an amendment expanding RICO's scope to apply prospectively only. *Id.*; *see also In re Vitamins Antitrust Litigation*, No. 99-197, 2000 WL 1511376 at *5 (D.D.C. Oct. 6, 2000) (refusing, on constitutional avoidance grounds, to interpret amendment increasing liability to apply retroactively "[b]ecause treble damages are punitive in nature and since the amended statute will likely increase defendants' liability").

To overcome the strong presumption against retroactive application, and require judicial resolution of these constitutional questions, there must be "a clear indication from [the legislature] that it intended such a result." *INS* v. *St. Cyr*, 533 U.S. 289, 316 (2001). "The standard for finding such unambiguous direction is a demanding one," requiring "statutory language that [is] so clear that it [can] sustain only one interpretation" or "unmistakable clarity." *Id.* at 316-318 (citations omitted). *See also Nantucket Conservation Foundation, Inc.* v. *Russell Mgmt. Inc.*, 380 Mass. 212, 214 (1980) ("As a general rule, statutes operate prospectively unless a contrary legislative intent is clearly shown."). The Commonwealth points to nothing in the MFCA that requires this Court to construe its enhanced penalties or multiple damages to apply retroactively nor to anything in the Act that suggests the Massachusetts legislature considered the obvious potential unfairness that would result from a dramatic retroactive increase in penalties and multiple damages for already completed conduct.

The provision on which the Commonwealth relies, G. L. c. 12, § 5K(1), is the MFCA's statute of limitations, which provides: "A civil action pursuant to section 5B to 5O, inclusive,

6

may be brought for acts or omissions that occurred prior to the effective date of this section, subject to the limitations period set forth in this section." That provision states only that "a civil action" under the MFCA can be brought with respect to conduct that predated its enactment in July 2000. The provision is silent about what penalties would be available in such an action.

Reading Section 5K(1) as limited to the question whether the "acts or omissions" could be subject to suit, but not what penalties should be imposed, is consistent with the purpose for which Section 5K(1) was adopted. On the same date of the MFCA's enactment, the legislature repealed G.L. c. 93, § 9B, which had prohibited the same conduct, but imposed a lesser punishment. Without the language of Section 5K(1), Section 9B's repeal would have raised the question whether pre-July 2000 frauds against the Commonwealth that were prohibited by both the old and new statutes might have gone unremedied because the cause of action under Section 9B no longer existed. By contrast, the legislature does not appear to have considered, much less addressed with unmistakable clarity, the question whether the increase in the damages multiplier and statutory penalties adopted as part of the MFCA should apply to pre-July 2000 violations of Section 9B.

Because Section 5K(1) is silent on the question of retroactive application of the MFCA's enhanced penalties to conduct that predated its enactment, this Court should avoid the constitutional questions that such retroactive application would raise by holding that the enhanced punishments adopted in July 2000 apply prospectively only.

## CONCLUSION

For the foregoing reasons, and all the reasons set forth in support of Warrick's Rule 50(b) motion, the Court should deny the Commonwealth's motion for the entry of judgment and, instead, enter judgment in Warrick's favor. Alternatively, if the Court denies Warrick's Rule 50(b) motion, the Court should enter final judgment in the amount of at most $14,643,893.

Respectfully submitted,

/s/ John P. Bueker
John T. Montgomery (BBO #352220)
Douglas H. Hallward-Driemeier (BBO #627643)
John P. Bueker (BBO #636435)
Amanda L. Lydon (BBO #669235)
Ropes & Gray LLP
800 Boylston Street
Boston, MA 02199-3600
(617) 951-7000

*Attorneys for Warrick*

Dated:  February 9, 2011

## CERTIFICATE OF SERVICE

I, John P. Bueker, hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record via ECF electronic filing on February 9, 2011.

/s/ John P. Bueker
John P. Bueker
