# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS,<br>PLAINTIFF,<br><br>v.<br><br>SCHERING-PLOUGH CORPORATION,<br>SCHERING CORPORATION and<br>WARRICK PHARMACEUTICALS CORPORATION,<br>DEFENDANTS | ) <br> ) <br> ) <br> )    C.A. No. 03-11865-PBS<br> ) <br> )   **(LEAVE TO FILE GRANTED**<br> )   **ON FEBRUARY 14, 2011)**<br> ) <br> ) <br> ) |

## COMMONWEALTH'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION FOR ENTRY OF JUDGMENT AND RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING THE *EX POST FACTO* CLAUSE

On January 25, 2011, the Court heard oral argument on Defendants' Motion for Judgment as a Matter of Law and the Commonwealth's Motion for Entry of Judgment.   On February 9, 2011, Defendants filed a supplemental brief regarding the retroactive application of the MFCA's penalty provisions. Dkt. No. 960.   The Commonwealth submits this supplemental memorandum to address questions raised by the Court during oral argument regarding the factual basis for the Commonwealth's MFCA Section 1 claim and the applicability of the United States Supreme Court's "grounded in fraud" standard (set forth in *Marcus v. Hess* 317 U.S. 537, 544 (1943)) and to respond to the arguments in Defendants' supplemental brief.

## I.    THERE IS NO BASIS FOR THE COURT TO SET ASIDE THE JURY'S FINDING OF LIABILITY UNDER MFCA SECTION 1

### A.    The Claims Defendants Caused to be Presented Included the Pricing Files Containing Defendants' False WACs.

Defendants' Section 1 argument is premised upon their assertion that the claims were not false or fraudulent because Defendants' false WACs were not specifically included in the pharmacy transmissions to MassHealth.   Defendants argue that the pricing file containing

Defendants' false WAC was separate from the pharmacy transmission and hence, should not be considered to be part of the "claim." As the Commonwealth has stated in prior briefing and oral argument, this is incorrect. *See* Dkt. No. 940 at 19-22, Dkt. No. 949 at 2-3. A "claim" is "any request or demand…for money or property." M.G.L. c. 12 § 5A(a); 31 U.S.C. § 3729(b)(2). In this case, each "demand for money" necessarily included the pricing file containing Defendants' false WACs. There could be no demand for payment without the pricing file because it contained the information necessary to determine the amount of money being "demanded." Defendants' falsely reported prices and the pricing files containing Defendants' false prices were already in existence when pharmacies transmitted information through the POPS system. The pharmacy transmission included an NDC number which determined which pricing file was activated. Defendants' own expert considered the pricing file to be a part of the "claim" and drew no distinction between the pricing file and the transmission made by the pharmacy. 9/23/10 Trial Tr. 12-61:12-20, attached hereto as Exhibit A. The "claims" in this case included the pricing files, which specifically contained Defendants' false WACs. Accordingly, Defendants caused false or fraudulent claims to be presented. Thus, there is no basis for the Court to set aside the jury's finding of liability under MFCA Section 1.

      **B.**      **Even if the Claims Did Not Include the Pricing Files, the Claims Were Still "False or Fraudulent Claims" Sufficient to Trigger MFCA Section 1 Liability Because They Were "Grounded In Fraud."**

Even if the claims in this case did not include the pricing file, the presented claims would still be "false or fraudulent claims" sufficient to trigger liability under MFCA Section 1, because they were "grounded in fraud" and "predicated on an underlying fraudulent pricing scheme." *See Marcus v. Hess,* 317 U.S. 537, 544 (1943); *Massachusetts v. Mylan Labs.,* 608 F.Supp.2d 127,

145 (D.Mass. 2008).  During oral argument, the Court questioned the applicability of the "grounded in fraud" language in *Marcus v. Hess:*

> THE COURT:  You know, the First Circuit maybe didn't have that case in mind, but they always say the sine qua non of a false claim is that it's got to be false.  So they've sort of moved away from the "grounded in fraud" language.

1/25/11 Tr. at 23:4-7.  The Commonwealth presumes that the Court was referring to *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp. ,*360 F.3d 220 (1st Cir. 2004) and *U.S. ex rel. Rost v. Pfizer, Inc.,* 507 F.3d 720, 727 (1st Cir. 2007), wherein the First Circuit noted that evidence of a false or fraudulent claim is "the *sine qua non* of a False Claims Act violation." *Karvelas,* 360 F.3d at 225; *Rost,* 507 F.3d 727.  In both cases, the First Circuit was emphasizing that not all fraudulent conduct gives rise to liability under the FCA.  In both cases, the defendants had clearly committed regulatory violations or participated in illegal conduct, but the First Circuit found there was insufficient evidence that any actual "claims" were submitted.  The First Circuit noted that "[T]he False Claims Act at least requires the presence of a claim-a call upon the government fisc-for liability to attach." *Karvelas,* 360 F.3d at 225 (quoting *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 785 (4th Cir. 1999).

As the Court acknowledged at oral argument, the First Circuit did not address *Marcus v. Hess* in either *Karvelas* or *Rost.*  It did not reach the issue of whether claims "grounded in fraud" constituted "false or fraudulent claims" under FCA Section 1 because there were no claims to scrutinize in either of those cases.  However, the Court's failure to address *Marcus v. Hess* in those cases does not represent a departure from or disagreement with the Supreme Court's "grounded in fraud" standard.  The First Circuit has favorably cited *Marcus v. Hess* and the "grounded in fraud" standard in *United States v. Rivera*, 55 F.3d 703, 706-707 (1st Cir. 1995).  In *Rivera,* the defendant hospital administrators obtained a mortgage loan from Merrill Lynch, a

3

private lender, for the purpose of expanding and renovating the hospital facilities.  HUD insured

the loan.  The defendants periodically submitted requests for disbursement of the loan proceeds

to Merrill Lynch, who then completed the request and forwarded it to HUD.  HUD approved the

disbursement and sent a Certificate of Mortgage Insurance to Merrill Lynch, who then released

the loan proceeds to the hospital.  The defendants siphoned off a portion of the loan proceeds and

diverted it to a furniture company the defendants created, through which they sold furniture and

equipment to the hospital at inflated prices and charged the hospital for equipment never

provided.  The hospital defaulted on the loan and Merrill Lynch filed an application for insurance

benefits with HUD, who ultimately paid Merrill Lynch $12 million under its agreement to insure

the loan.  The government filed suit against the defendants pursuant to Section 1 of the FCA.

*See id.*  While the First Circuit ultimately held the claim was barred by the statute of limitations,

it did find that the defendants' conduct violated Section 1 of the FCA:

> The present case is complicated by the fact that [the defendants'] fraud acted, in
> the first instance, upon a private lender, Merrill Lynch, rather than directly upon
> the government. This fraud, however, was followed by the hospital's default,
> resulting in Merrill Lynch's claim to HUD for reimbursement for its loss on the
> defaulted loan under the federal insurance that defendants had helped procure.
> Although, from Merrill Lynch's perspective, the claim it presented may not have
> been "false or fraudulent," that claim was inflated by defendants' earlier fraud;
> and the case law allows the United States, in such circumstances, to sue
> defendants under the FCA for having "caused" the filing of a "false" claim
> against the government.

*Id.*  The First Circuit cited *Marcus v. Hess* for the proposition that provisions of the FCA

"indicate a purpose to reach any person who knowingly assisted in causing the government to

pay claims which were grounded in fraud, without regard to whether that person had direct

contractual relations with the government." *Id.* at 707.  In acknowledging a violation of Section

1, the First Circuit compared the facts to *United States v. Venziale,* 268 F.2d 504 (3d Cir. 1959),

in which the Third Circuit held that a claim was "grounded in fraud" where the government was

compelled to pay an innocent third person more than it otherwise would have as a result of the defendant's fraud in inducing the undertaking. *Id.* at 707, n. 3. The First Circuit explained that similarly, in *Rivera,* the defendants' fraudulent statements induced the government to assume more insurance obligation that it otherwise would have.

Additionally, in *Karvelas,* the First Circuit relied upon and quoted *Harrison v. Westinghouse Savannah River Co., supra,* a case in which the Fourth Circuit relied on *Marcus v. Hess* (among other cases) in ruling that the term "false or fraudulent claim" should be construed broadly to include situations in which the claims submitted were not in and of themselves false, but were predicated on a prior fraudulent scheme. *See Harrison,* 176 F.3d at 785-788.

Accordingly, *Marcus v. Hess* and its "grounded in fraud" standard remain good law, and continue to be recognized as such by the First Circuit. Defendants themselves concede that *Marcus v. Hess* "has maintained vitality in the case law ever since it was decided." 1/25/11 Tr. at 14:10-12. However, Defendants contend that the Supreme Court's "grounded in fraud" language did not specifically apply to Section 1 claims:

> MR. MONTGOMERY: Of course your Honor is right. The grounded in fraud is not the standard. If you look at *Marcus v. Hess*, it uses that phrase but only in characterizing all three prongs together as reflecting a federal policy against actions grounded in fraud. It is not a basis for distinguishing between any of the prongs, and it certainly doesn't define prong one. So that's point number one. 1/25/11 Tr. at 24:21-25:2.

Defendants are incorrect. The Court in *Marcus v. Hess* looked to Sections 2 and 3 to examine the intent of the legislature in order to interpret Section 1:

> "The conclusion that the first clause of s 5438 includes this form of 'causing to be presented' a 'claim upon or against the Government' is strengthened by consideration of the other clauses of the statute…These provisions, considered together, indicate a purpose to reach any person who knowingly assisted in causing the government to pay claims which were grounded in fraud, without regard to whether that person had direct contractual relations with the government."

*Marcus v. Hess,* 317 U.S. at 544-545. Considering the statute as a whole, the Court was able to determine the legislature's intentions regarding the type of conduct that should be captured by the statute. From this legislative intent, the Court specifically concluded that the first clause (i.e. Section 1) of the FCA precluded conduct that caused the government to pay claims which were "grounded in fraud."

Further evidence that the Supreme Court meant that Section 1 includes claims that are "grounded in fraud" can be found in the facts of *Marcus v. Hess* and the specific conduct for which the Court found the defendants liable under Section 1. As the Commonwealth explained at oral argument, defendants have mischaracterized the underlying facts of *Marcus v. Hess* in both their Sur-reply to the Commonwealth's Motion for Entry of Judgment and during oral argument.

The defendants in *Marcus v. Hess* were electrical contractors who participated in a bid rigging conspiracy in which defendants agreed amongst themselves which defendant would submit the low bid for a particular project and which would submit higher bids. *See Marcus v. Hess,* 41 F.Supp. 197, 206 (W.D. Penn. 1941). Some, but not all, of the defendants who bid on projects certified that their bids were not collusive. *Marcus v. Hess,* 317 U.S. at 543. Not all of the defendants even submitted a bid for each project. *Marcus v. Hess,* 41 F.Supp. at 206. Yet, the Court found them liable under Section 1 of the FCA because they "knowingly assisted in causing the government to pay claims which were grounded in fraud." *Marcus v. Hess,* 317 U.S. at 542-44.

Moreover, contrary to Defendants' representation, numerous courts, including the First Circuit in *Rivera,* have cited the Supreme Court's "grounded in fraud" language in *Marcus v. Hess* in their own determinations of liability under FCA Section 1. *See e.g. United States ex rel.*

*Schmidt v. Zimmer, Inc.,* 386 F.3d 235, 242-45 (3d Cir. 2004); *United States ex rel. Bane v. Breathe Easy Pulmonary Svcs., Inc.,* 2007 WL 4885468, *7 (M.D. Fla. Nov. 30, 2007); *United States v. Eghbal,* 475 F.Supp.2d 1008, 1013-26 (C.D.Cal. 2007).

## II.   DEFENDANTS' *EX POST FACTO* ARGUMENTS ARE INCORRECT

### A.  All of the MFCA's Provisions are Subject to Retroactive Application

The Massachusetts legislature clearly intended the MFCA to apply retroactively. Section 5K(1) of the MFCA provides, "[a] civil action pursuant to sections 5B to 5O, inclusive may be brought for acts or omissions that *occurred prior* to the effective date of this section" subject to the statute of limitations set forth in the same section.  M. G. L. c. 12, §5K(1) (emphasis added).  The cases upon which the Defendants rely in support of their "ambiguity" argument are premised on the absence of **any** provision in the statute or evidence "clearly" identifying the legislature's intention to retroactively apply amendments governing statutory remedies.  *See Resolution Trust Corp. v. S&K Chevrolet,* 868 F. Supp. 1047, 1062 (1994) (finding "no clear congressional intent which would indicate that Congress intended retrospective application . . ."); *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 970 (2d Cir. 1985) (noting that the new Act was "barren of any indication of Congress' views on retroactive application").  Such is simply not the case here.  To  read the statute as the Defendants' suggest would be contrary to the most fundamental principle of statutory construction: that the plain language of the statute must govern.

Even if this Court does not construe §5K(1) as an express intention to have the MFCA's penalty provisions apply retroactively, the statute in operation, as dictated by the words of the Massachusetts Legislature, requires the conclusion that the statute by necessary implication was intended to be applied retroactively to acts and conduct occuring prior to its enactment.  As the Supreme Judicial Court has expressly held:

7

The general rule of interpretation is that all statutes are prospective in their operation, **unless an intention that they shall be retrospective appears by necessary implication from their words, context or objects** when considered in the light of the subject matter, the pre-existing state of the law and the effect upon existing rights, remedies and obligations. . . .'

*Child Support Enforcement Div. of Alaska v. Brenckle,* 424 Mass. 214, 219 (1997), *quoting Hanscom v. Malden v. Melrose Gaslight Co.,* 220 Mass. 1, 3 (1914) (emphasis added).  Thus, a statute must be construed to apply retroactively if either the legislature has expressly stated such an intention OR if the legislature's intent for retroactive application is apparent by **necessary implication**.  Federal law fully supports this conclusion.  *See Landgraf v. USI Film Products, Inc.*, 511 U.S. 244, 268 (1994), *quoting Society for Propagation of the Gospel v. Wheeler,* 22 F.Cas. 756, 767 (CCNH 1814) ("every statute, which . . . attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective . . .").  In the absence of clear legislative language to the contrary, the repeal of the predecessor statute, including the remedies therein, and the passage of the MFCA and its enhanced remedies on the very same day, warrants the logical conclusion that the legislature intended the new remedies would apply retroactively in accordance with §5K(1).[1]

### B.  The Ex Post Facto Clause Does Not Apply Because the MFCA Is Not Sufficiently Punitive.

It is well-settled that a legislative increase in the penalties levied under a civil statute does not, in and of itself, trigger the necessity to apply the Ex Post Facto Clause.  *See Usery v. Turner Elkhorn Mining Company*, 428 U.S. 1, 16 (1976).  *See also Hudson v. United States,* 522 U.S. 93, 104 (1997) (holding that monetary penalties have not "historically been viewed as

---

[1]  Moreover, even if a statute is repealed, herein M.G.L. c. 93, §9B, conduct occurring while the statute was in effect remains actionable under that statute.   Therefore, the Defendants contention that the MFCA would only be retroactive to conduct, but not to penalties, defies the logic of such a legal rule.  *See e.g., Commonwealth v. Benoit,* 346 Mass. 294, 296 (1963), *citing Nassar v. Commonwealth*, 341 Mass. 584, 589 (1961).

punishment"). While mere legislative labeling of a statute as civil is insufficient to bar application, the court must undertake a separate analysis to determine whether the "statutory scheme was so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." *Hudson,* 522 U.S. at 99. As the analysis below sets forth, the MFCA's provisions do not warrant the application of the Ex Post Facto Clause. *See United States v. Philip Morris USA*, 310 F. Supp. 2d 58, 66 (D.C. Cir. 2004) ("Ex Post Fact Clause . . . applies only to punishment").[2]

In their supplemental memorandum, the Defendants rely on two district court opinions, *United States ex rel. Baker v. Comm. Health Sys., Inc.*, 709 F.Supp.2d 1084 (D.N.M. 2010) and *United States ex rel. Sanders v. Allison Engine Co., Inc.*, 667 F. Supp. 2d 747 (S.D. Ohio 2009), to support their contention that the trebling damages and penalties provisions of the Federal False Claims Act ("FCA") are "punitive in purpose and effect." Defts' Supp. Memo. p. 3. The Defendants conveniently avoid, however, the substantive analysis of a case reaching the opposite conclusion, *United States ex rel. Drake v. NSI, Inc.*, 2010 WL 3417854 (D. Conn Aug. 26, 2010). Not only did *Drake,* a case decided a mere 12 days before the trial in the instant matter, conclude that the FCA should be construed as civil in effect, but the holding expressly rejected the findings of the *Allison Engine* and *Baker* decisions. *Drake*, 2010 WL 3417854 at *7-8.

Notably, the court in all three of these cases utilized the seven factor test set out in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-169 (1963), to determine whether the FCA was so punitive in nature that it transformed from a civil penalty into a criminal remedy.

---

[2]  As set forth on pg. 14 of the Commonwealth's Opposition to the Defendants' Renewed Motion for Judgment as a Matter of Law, [Dkt. No. 940], the Defendants' Ex Post Facto argument should ultimately be deemed waived on either of two grounds: 1) for failing to raise this argument in their original Fed.R.Civ.P. 50(a) motion, *see Correa v. Hosp. San Francisco*, 69 F.3d 1184 (1st Cir. 1995) (holding that a renewed motion is bound by the movant's earlier 50(a) motion"); and 2) for failing to raise this argument prior to the conclusion of trial under Fed.R.Civ.P. 12(h)(2), *see Arbaugh v. Y&H Corp.*, 564 U.S. 500, 507 (2006).

Moreover, all of the courts reached the same conclusions as to all of the factors except one: whether the FCA is historically regarded as punishment.  With regard to that single factor, the *Drake* court's historical review of the FCA as being primarily civil in nature is consistent with critical Supreme Court cases addressing this very topic.

As *Drake* recognized, the Supreme Court construed the FCA prior to the 1986 amendments, which then mandated a $2000 civil penalty and doubling of damages, to be a wholly remedial provision.  *See Cook County, Ill. v. United States ex rel. Chandler*, 538 U.S. 119, 130 (2003), *citing Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 784-785 (2000).   After Congress amended the FCA in 1986 (thereby increasing the possible civil penalty and multiplier), the Supreme Court determined that such a change had only resulted in making the statute both partially punitive and partially remedial.  *Cook County, Ill.*, 538 U.S. at 130-131.[3]  Focusing primarily on the trebling damages portion of the statute, the Supreme Court in *Cook County, Ill.* noted that the FCA continued to possess remedial aspects because it was required to ensure "make whole recovery" related to the necessity "to compensate the Government completely for the costs, delays and inconveniences occasioned by fraudulent claims."  *Id.* at 131, *quoting United States v. Bornstein*, 423 U.S. 303, 315 (1976).  In light of this precedent, the *Drake* court correctly concluded that "[a]lthough there are punitive aspects to the FCA, in light of the fact that it has been primarily viewed as civil, this factor weighs in favor of finding FCA to be civil and remedial in nature and effect."  *Drake*, 2010 WL 3417854 at *8.[4]

---

[3]  The Court's decision in *Cook County, Ill.* appears to be a retreat from its position in *Vt. Agency of Natural Res.*, which originally held that the trebling damages portion of the FCA was "essentially punitive in nature."  529 U.S. at 785.  This "retreat" has been recognized by various courts. *See e.g. Drake*, 2010 WL 3417854 at *7; *United States ex rel. Colucci v. Beth Israel Med. Ctr.*, 603 F. Supp. 2d 677, 680 (S.D.N.Y. 2009) ("[*Cook County, Ill.*] moved away from the Supreme Court's prior decision in *Stevens* that the FCA was 'essentially punitive'").

[4]  While the Defendants make much of the fact that the Commonwealth urges this Court to impose penalties to "punish and deter" their conduct, such a request is simply not inconsistent with the Supreme Court's conclusion in *Cook County, Ill.* that the FCA, and by analogy the MFCA, contains both remedial and punitive aspects.  Recovery

While the Defendants urge that the historical review undertaken in *Allison Engine* and *Baker* should persuade this Court, the Commonwealth notes that the Supreme Court has advised that "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Hudson*, 522 U.S. at 100. *See also Drake*, 2010 WL 3417854 at *10. The three district court opinions represent a disagreement as to the post-1986 version of the FCA. Consequently, there is hardly the "clearest proof" to overcome the legislative intent that the FCA, and by analogy the MFCA, continues to operate primarily as a civil remedy. As the Senate Committee Report regarding the 1986 amendments to the FCA advised, the legislative intent for FCA proceedings was that they were to be "civil and remedial in nature and [] brought to recover compensating damages . . . ." 1986 U.S.C.C.A.N. 5296. *See also Allison Engine Co., Inc.*, 667 F. Supp. 2d at 753.

Further bolstering the decision in *Drake* are decisions that construe the FCA as civil and remedial in scope absent a *Kennedy*-like analysis. Relying, in part, on the holding in *Hudson* that "monetary penalties" have not "historically been viewed as punishment," the D.C. Circuit Court of Appeals recently concluded that the Ex Post Facto Clause is inapplicable to the FCA because the statute "is not penal." *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871, 878-879 (D.C. Cir. 2010), *citing Hudson*, 522 U.S. at 100-103. Still other courts, in considering the question presently before this Court for purposes other than retroactivity, have concluded that the FCA remains remedial in effect. *See e.g.. United States ex rel. Colucci v. Beth Israel Med. Ctr.*, 603 F. Supp. 2d 677, 681 & n. 1 (S.D.N.Y. 2009) (citing the proposition offered in *Cook County, Ill.* that "treble damages certainly do not equate with classic punitive

of damages on behalf of the citizens of the Commonwealth remains the primary goal, which given the length of time and scope of the conduct by the Defendants is unlikely to be fully recouped by the jury's determination of damages. However, a need to prevent such conduct from being engaged in the future is also a prudent consideration for the Attorney General's Office to undertake.

11

damages"). *See also Fauci v. Genentech*, 2007 WL 3020191 at *4 (D. Mass. Oct. 12, 2007) (in a wrongful death action, holding that FCA "provides a comprehensive and adequate remedial scheme"); *In re Pharm. Indus. Average Wholesale Price Litigation*, 491 F. Supp. 2d 12, 18 (D. Mass. 2007) (finding that FCA is a "remedial statute").

While the Defendants argue the MFCA is "more punitive in character" than the FCA, the characteristics they rely upon in support of such a proposition, specifically prejudgment interest and attorney's fees, are inconsistent with what the law requires for consideration.[5]  In *Hudson*, the Supreme Court made clear that courts must evaluate a statute "on its face" when determining whether the provisions operate remedially or punitively in purpose and effect.  *Hudson*, 522 U.S. at 100.   The MFCA does not, on its face, provide for the imposition of prejudgment interest. *See* M. G. L. c. 12, §5B.   The significance of the absence of this remedy in the MFCA comes from the Supreme Court's decision in *Cook County, Ill.*, which found that the trebling portion of the FCA retains a remedial character partly because the statute "has no separate provision for prejudgment interest, which is usually thought essential to compensation."  *Cook County, Ill.*, 538 U.S. at 131.

As to the Defendants' erroneous reliance on attorney's fees, the Supreme Court has never advised that such a factor is relevant for purposes of determining whether a civil statute is punitive or remedial.  *See Cook County, Ill.* 538 U.S. at 131 (detailing factors justifying the remedial status of the FCA's trebling provisions).   The absence of consideration of such a factor should not be surprising given the Supreme Court's conclusion that "[a]ttorney's fees

---

[5] As an ancillary matter, the Defendants' fair notice concerns are questionable.  It is notable that the Defendants' conduct in this case involved a defrauding of Medicaid, a joint federal-state program.  Consequently, the Defendants conduct in violation of the MFCA naturally exposed them to liability under the FCA—which has, since 1986, mandated a trebling of damages and a $5000 to $10,000 civil penalty per violation for violations of Sections 1 and 2 of the Act.  In other words, the Defendants were certainly on notice of their exposure to these remedies throughout the entire time period governing this case.

determinations . . .are 'collateral to the main cause of action' and 'uniquely separable from the cause of action to be proved at trial.'"  *Landgraf*, 511 U.S. at 277.  In other words, such a factor is irrelevant to a determination of whether a statute, on its face, serves a remedial scheme or serves a punitive effect.  *See generally, Landrgraf,* 511 U.S. at 276-277, *citing Bradley v. Sch. Bd. of Richmond*, 416 U.S. 696, 711 (1974).

> **C.   Regardless of Whether or Not the Ex Post Facto Clause Applies to the MFCA, the Commonwealth Is Still Entitled to a Trebling of All Damages under the Massachusetts Medicaid False Claims Act**.

As this Court is aware, the jury in this case not only found that the Defendants violated subsection 1 and 2 of the MFCA, but also found that they violated the Massachusetts Medicaid False Claims Act ("MMFCA").  Enacted in 1993, *see* St. 1993, c. 161, §17, the MMFCA mandates the recovery of "three times the amount of damages sustained . . ."  *See* M. G. L. c. 118E, §44.  Because the statute was enacted prior to the start of the damages period in this case, the Ex Post Facto Clause provides no bar to the Commonwealth's recovery of treble damages under the MMFCA.  Therefore, the Defendants' contention that the Commonwealth is only entitled to a doubling of damages sustained prior to July of 2000 is wholly incorrect.

Thus, the question as to whether the Ex Post Facto Clause applies to the MFCA would only impact this Court's determination as to what amount of mandatory civil penalties should be applied to the false claims found by the jury.

> **D.   If this Court Finds the Ex Post Facto Clause Applies to the MFCA, the Commonwealth Is Entitled to Civil Penalties under M. G. L. c. 93, §9B.**

Even if this Court were to conclude that the Ex Post Facto Clause applies in this instance, the amount the Commonwealth requests in civil penalties under the MFCA need not be reduced because the false claims upon which this request was made occurred after the date of enactment of the MFCA.  *See* Dkt. No. 947, Comm's Motion for Entry of Judgment, p. 17-18.  The

Defendants' Ex Post Facto argument taken to its logical conclusion would result in the Defendants being liable for the civil penalties ascribed under M. G. L. c. 93, §9B.  Under this statute, the conduct the Defendants' engaged in prior to July of 2000 would be subject to a $2000 civil penalty per false claim.

The Defendants have urged the Court to avoid constitutional issues.  The imposition of civil penalties under M. G. L. c. 93, §9B, may avoid engaging in either an Excessive Fines Clause or a Due Process Clause analysis. As the Supreme Court has made clear, the Excessive Fines Clause only governs payments that are considered "punishment for an offense," *see United States v. Bajakajian,* 524 U.S. 321, 327-328 (1998)*,* and the Due Process Clause only governs payments that are considered "punitive,"  *See State Farm Mut. Aut. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003).   The pre-1986 FCA, mandating a doubling of damages and a $2000 civil penalty, is identical in all respects to M. G. L. c. 93, §9B.   Given the Supreme Court's holding that the pre-1986 FCA was "wholly remedial," *see Cook County, Ill.,* 538 U.S. at 130, a matter not disputed by the Defendants, the remedial damages and penalties to be recouped under the analogous M. G. L. c. 93, §9B, would therefore not be subject to constitutional challenges.

Accordingly, if this Court were to conclude that the Ex Post Facto clause applies and desires to avoid constitutional scrutiny under the Excessive Fines Clause and/or the Due Process Clause, the Commonwealth requests the opportunity to amend its Motion for Entry of Judgment to request civil penalties, as outlined in the provisions of M. G. L. c. 93, §9B, for the Defendants' false claims made prior to the enactment of the MFCA.

## **<u>CONCLUSION</u>**

For the foregoing reasons, and the reasons set forth in the Commonwealth's prior briefs, the Court should grant the Commonwealth's Motion for Entry of Judgment in the amount of

$205,484,984 and deny Defendants' Renewed Motion for Judgment as a Matter of Law; or

alternatively, in the event that this Court concludes that the Ex Post Facto Clause applies, grant

the Commonwealth's request to amend its Motion for Entry of Judgment to seek civil penalties

under M. G. L. c. 93, §9B.

Respectfully submitted,

Martha Coakley
Attorney General

By:     /s/ Peter A. Mullin
        Peter A. Mullin (BBO # 360620)
        K. Nathaniel Yeager (BBO # 630992)
        John Pina, III (BBO # 652247)
        Robyn Pozza Dollar (BBO# 674480)
        Steven T. Sharobem (BBO# 664583)
        Assistant Attorneys General
        One Ashburton Place
        Boston, MA 02114
Dated: February 11, 2011     (617) 963-2622

## Certificate of Service

I hereby certify that I caused a copy of the foregoing to be served on counsel for each other party in this case, by filing it electronically in the Court's CM/ECF system this 11th day of February 2011.

/ s/ Peter A. Mullin
  Peter A. Mullin
  Assistant Attorney General