UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THE COMMONWEALTH OF MASSACHUSETTS, <br><br> Plaintiff, <br><br> v. <br><br> MYLAN LABORATORIES, INC., *et al.* <br><br> Defendants. | Civil Action No. 03-CV-11865-PBS <br><br> **LEAVE TO FILE GRANTED ON APRIL 12, 2011** |

**SUPPLEMENTAL AUTHORITY
IN SUPPORT OF WARRICK'S RENEWED MOTION FOR JUDGMENT AS A
MATTER OF LAW OR IN THE ALTERNATIVE FOR A NEW TRIAL**

Warrick submits this memorandum to address the significance of *Astra USA, Inc.* v. *Santa Clara County, Cal.*, 563 U.S. __ (2011).  At a minimum, *Santa Clara* makes clear that the Commonwealth cannot circumvent the absence of a private right of action to enforce the Medicaid Rebate Agreement by labeling its cause of action a breach of the implied covenant of good faith and fair dealing, effectively a breach of contract claim.  By the same logic, *Santa Clara* also establishes that the Commonwealth may not circumvent the proscription against private enforcement of the Medicaid Rebate Agreement by relying on the Agreement under the Commonwealth's various statutory and common law fraud claims as the source of an affirmative duty on the part of Warrick to report "true" prices, as opposed to simply withdrawing its outdated WACs following launch.  Because, under the Commonwealth's reimbursement formula, the Commonwealth would have paid *more* for Warrick's albuterol if the allegedly inflated WACs had been withdrawn and not replaced with "true WACs," the absence of any

enforceable duty to report a "true" price for the drugs is fatal to the Commonwealth's other causes of action as well.

I. *SANTA CLARA* MAKES CLEAR THAT THE COMMONWEALTH CANNOT BRING A BREACH OF CONTRACT CLAIM AGAINST WARRICK TO ENFORCE THE MEDICAID REBATE AGREEMENT

In *Santa Clara County*, the Supreme Court held that public health care facilities that are eligible to buy drugs at "ceiling prices" under Section 340B of the Public Health Services Act, 42 U.S.C. § 256b, ("340B entities") could not sue as third-party beneficiaries to enforce the government-prescribed Pharmaceutical Pricing Agreements between the Department of Health and Human Services ("HHS") and drug manufacturers in which the manufacturers have agreed to offer the 340B entities drugs at those prices. The Court noted that 340B entities "have no right of action under §340B itself," and that "[a] third-party suit to enforce an HHS-drug manufacturer agreement … is in essence a suit to enforce the statute itself." *Santa Clara*, slip op. at 5, 6-7. "The absence of a private right to enforce the statutory ceiling price obligations would be rendered meaningless," the Court observed, "if 340B entities could overcome that obstacle by suing to enforce the contract's ceiling price obligations instead." *Id.* at 7.

*Santa Clara*'s holding applies equally to preclude breach of contract claims to enforce the Medicaid Drug Rebate Agreement. Indeed, the Court noted that "[t]he 340B Program is tied to the earlier-enacted, much larger Medicaid Drug Rebate Program." *Id.* at 2. The Supreme Court specifically noted that "[t]he 340B Program, like the Medicaid Drug Rebate Program, employs a form contract as an opt-in mechanism" that, in effect, "simply incorporate[s] statutory obligations and record[s] the manufacturers' agreement to abide by them." *Id.* at 3, 6. In other words, the "Medicaid Drug Rebate Program agreements … serve as the means by which drug manufacturers opt into the statutory scheme," such that "[t]he statutory and contractual obligations, in short, are one and the same." *Id*. at 6, 7. Because these statutory agreements are

not "contracts" in the traditional sense, but mechanisms that simply effectuate the statutory scheme, they are not governed by traditional contract law, such as contract-based enforcement remedies. *Id.* at 6-7.

The Commonwealth's breach of contract claim must therefore be dismissed. It is of no moment that the Commonwealth here alleges not that Warrick violated the core promises of the Medicaid Drug Rebate Agreement to provide a rebate calculated based on AMP and "best price," but instead a penumbral, unspecified obligation that was inferred from the duty of good faith and fair dealing owed by parties to a contract. As the Supreme Court has said, because the Medicaid Drug Rebate Agreement is not a negotiated agreement, but a standardized form by which the manufacturer opts in to the statutory scheme, "[t]he statutory and contractual obligations … are one and the same." *Id.* at 7. When Congress has provided no private right to enforce the statute—as this Court has held is the case with 42 U.S.C. § 1396r-8, *see Massachusetts* v. *Mylan Labs.*, 357 F. Supp.2d 314, 326 (D. Mass. 2005) ("I conclude that the states do not have a remedy under the statute.")—a party cannot circumvent that limitation by pleading the statutory obligation as a contractual one. *Santa Clara*, slip op. at 6-7 ("The absence of a private right to enforce the statutory … obligations would be rendered meaningless if 340B entities could overcome that obstacle by suing to enforce the contract's … obligations instead.").

II. **THE COMMONWEALTH'S FRAUD CLAIMS ALSO SEEK IMPERMISSIBLY TO CIRCUMVENT THE PROHIBITION ON PRIVATE ENFORCEMENT OF THE MEDICAID DRUG REBATE AGREEMENT**

As the Commonwealth's post-trial briefing has demonstrated, the Commonwealth's various statutory and common law fraud claims also seek impermissibly to enforce duties that purportedly arise under the Medicaid Drug Rebate Agreement. The Commonwealth's assertions regarding scienter, materiality, damages, and causation all rely on the assertion that, after the albuterol launch price had ceased to be accurate, Warrick failed to update the pricing

3

compendium with a "true WAC." *See* Comm.'s Opp. to Mot. for J. [Dkt. 940] (Nov. 3, 2010); *id.* at 35 (scienter); *id.* at 36 (materiality); *id.* at 45-46 (damages). Having acknowledged, however, that Massachusetts law did not require Warrick to report WACs, Comm.'s Sur-Reply in Opp. to Mot. for J. at 11 [Dkt. 949] (Dec. 16, 2010), the Commonwealth relies on the Medicaid Drug Rebate Agreement and the duty of good faith and fair dealing as the source of a duty requiring Warrick to do more than simply withdraw its outdated WACs. For example, the Commonwealth has repeatedly relied, in the context of its fraud claims, on the contention that "*by entering into Medicaid rebate agreements*, Defendants were required . . . to familiarize themselves with the legal requirements, standards and procedures of the Medicaid program." Comm.'s Opp. to Mot. for J. at 25 [Dkt. 940] (Nov. 3, 2010) (citing *Massachusetts* v. *Mylan Labs.*, 608 F. Supp. 2d 127, 154 (D. Mass. 2008)) (emphasis added). Likewise, in response to Warrick's argument that the Commonwealth suffered no damages on account of the outdated launch prices (because, in the absence of the launch prices, there would have been no WAC price for Warrick's products, and MassHealth would have paid based on a higher value), the Commonwealth has urged that its damages should be determined by "what would have occurred had the defendant performed under the contract," meaning published "true WACs" as allegedly required by the covenant of good faith and fair dealing under the Medicaid Rebate Agreement. Comm.'s Sur-Reply in Opp. to Mot. for J. at 14 [Dkt. 949] (Dec. 16, 2010).

    The Commonwealth's invocation of *Backman* v. *Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (en banc), is similarly little more than an attempt to enforce by other means the pricing provisions in the Medicaid Rebate Agreement that MassHealth never incorporated into Massachusetts law. In the same breath that it raises *Backman*, the Commonwealth invokes Warrick's obligations under the Medicaid Rebate Agreement as the source of Warrick's

supposed "duty to correct."  Comm.'s Mem. Regarding *Backman* v. *Polaroid* at 2-3 [Dkt. 903] (Sept. 15, 2010).

*Santa Clara* makes clear that the Commonwealth cannot rely on the Rebate Agreement as the source of a duty under which the *only* corrective action supposedly available to Warrick was the submission of a "true WAC" (i.e., AMPs).  "The absence of a private right to enforce the statutory ceiling price obligations would be rendered meaningless" if plaintiffs "could overcome that obstacle by suing to enforce the contract's … price obligations instead."  *Santa Clara*, slip op. at 7.  In light of the Supreme Court's holding, the Commonwealth simply cannot base the purported duty to update MassHealth with "true WACs," *i.e.*, AMPs, on the Medicaid Rebate Agreement.

In *Santa Clara*, the Supreme Court declined to address the question whether States can bring "state-law fraud claims based on fraudulent reporting of 'best prices' to HHS."  *Id.* at 8 n.5.  This Court need not resolve that question in this case either.  In this case, as Warrick has explained on numerous occasions, the Commonwealth has not been injured on account of the alleged "fraudulent reporting of 'best prices'" or even AMPs.  Rather, the source of MassHealth's alleged injury is Warrick's failure to report "true WACs."  Comm.'s Opp. to Mot. for J. at 45-46 [Dkt. 940] (Nov. 3, 2010) ("The damages [calculated by Dr. Hartman] were the difference between what was actually paid and what would have been paid had Warrick reported a true WAC.").  The presence of allegedly inflated WACs in FDB's database had only one effect on MassHealth – to lower the price paid by MassHealth whenever the reported WAC was lower than the other available values under MassHealth's reimbursement formula.

Because the Commonwealth seeks not to enforce a common-law duty not to defraud another, but a duty grounded in the Medicaid Rebate Agreement to report a true WAC, the

5

Commonwealth's fraud claims are barred by the logic of the Supreme Court's decision in *Santa Clara*. Just as a third-party contract claim to enforce the benefits of the best price obligation under the Rebate Agreement is "in essence a suit to enforce the statute itself," *Santa Clara*, slip op. at 6-7, so too is a supposed fraud claim under which the Commonwealth has been "damaged" only by comparison to what it claims would have been the case if Warrick had complied with its statutory obligations embodied in the Rebate Agreement. The Commonwealth's fraud claims are just as much an attempt to circumvent "[t]he absence of a private right to enforce the statutory … obligations" as was Santa Clara County's claim. *Id.* at 7.

For the foregoing reasons, the Court should grant Warrick's motion for judgment as a matter of law on all of the Commonwealth's claims.

Respectfully submitted,

/s/ John P. Bueker
John T. Montgomery (BBO #352220)
Douglas H. Hallward-Driemeier (BBO #627643)
John P. Bueker (BBO #636435)
Amanda L. Lydon (BBO #669235)
Ropes & Gray LLP
800 Boylston Street
Boston, MA 02199-3600
(617) 951-7000

*Attorneys for Warrick*

Dated: April 12, 2011

**CERTIFICATE OF SERVICE**

I, John P. Bueker, hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record via ECF electronic filing on April 12, 2011.

/s/ John P. Bueker
John P. Bueker