```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS
```

```
_____
                               )
THE COMMONWEALTH OF            )
MASSACHUSETTS,                 )
                               )
          Plaintiff,           )
                               )
     v.                        ) CIVIL ACTION NO. 03-11865-PBS
                               )
SCHERING-PLOUGH CORPORATION,   )
SCHERING CORPORATION, &        )
WARRICK PHARMACEUTICALS        )
CORPORATION,                   )
                               )
          Defendants.          )
_____)
```

**MEMORANDUM AND ORDER**

September 23, 2011

Saris, U.S.D.J.

### I. INTRODUCTION

The Commonwealth of Massachusetts claims that Schering-Plough Corporation, Schering Corporation, and Warrick Pharmaceuticals Corporation caused the Massachusetts Medicaid Program to overpay for the generic drug Albuterol by fraudulently inflating the "Wholesale Acquisition Cost" ("WAC") of the drug. The Commonwealth argues that the spreads between defendants' reported prices and "true" WACs ranged from 100% to 700%. Albuterol is a drug used to prevent and treat respiratory problems caused by lung diseases such as asthma.

After a lengthy trial, the jury returned a verdict in favor of the Commonwealth, finding that defendants committed fraud and violated the Massachusetts False Claims Act ("MFCA") and the

Massachusetts Medicaid False Claims Act ("MMFCA"). (See Jury Verdict, Docket No. 934.) After trial, defendants filed a motion seeking judgment as a matter of law in their favor or, alternatively, a new trial. (Docket No. 936.) The Court, *inter alia*, allowed defendants' motion for judgment as a matter of law to the extent it pertained to Prong 1 of the MFCA, (Docket No. 968), and entered an amended judgment on May 23, 2011. (Docket No. 976.) On June 13, 2011, the Commonwealth filed a motion to alter or amend the Court's judgment, pursuant to Fed. R. Civ. P. 59(e), arguing that the First Circuit's recent opinion in <u>United States ex rel. Hutcheson v. Blackstone Medical, Inc.</u>, 647 F.3d 377 (1st Cir. 2011), calls into question this Court's ruling granting defendant's motion for judgment as a matter of law pertaining to Prong 1 of the MFCA. (Docket No. 981.) The First Circuit subsequently issued a related opinion in <u>United States ex rel. Westmoreland v. Amgen, Inc.</u>, __ F.3d __, 2011 WL 2937420 (1st Cir. July 22, 2011). After a review of the record and the First Circuit's recent opinions, the Court **DENIES** the Commonwealth's motion.

## II.   FACTUAL BACKGROUND

The Court assumes familiarity with the factual record of this case, as well as drug pricing issues discussed in its previous decisions in this case and in the related multi-district litigation. See <u>Massachusetts v. Schering-Plough Corp.</u>, __ F.Supp. 2d __, 2011 WL 1575198 (D. Mass. Apr. 27, 2011);

Massachusetts v. Mylan Labs., Inc., 608 F. Supp. 2d 127 (D. Mass. 2008).

### III. DISCUSSION

There are generally only four recognized grounds upon which the Court can grant a Rule 59(e) motion: (1) manifest errors of law or fact, (2) newly discovered or previously unavailable evidence, (3) manifest injustice, and (4) an intervening change in controlling law. See Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 7 n. 2 (1st Cir. 2005) (citing 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2810.1 (2d ed.1995)).

The sole question is whether the First Circuit's decision in Hutcheson is either an intervening change in controlling law or clearly establishes this Court made a manifest error in law when granting defendant's motion for judgment as a matter of law pertaining to Prong 1 of the MFCA. Prong 1 of the MFCA creates liability for any person who "knowingly . . . causes to be presented, a false or fraudulent claim for payment or approval." Mass. Gen. Laws ch. 12, § 5B(1).  This provision is modeled after the similarly worded Section 3729(a)(1) of the federal FCA.  31 U.S.C. § 3729(a)(1).  As such, Massachusetts courts look for guidance in interpreting the MFCA to cases and treatises interpreting the FCA.  Scannell v. Attorney Gen., 70 Mass. App. Ct. 46, 49 n.4, 872 N.E.2d 1136, 1138 n.4 (2007) (citing

Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 611, 405 N.E.2d 106, 108 (1980)).

In Hutcheson, the First Circuit addressed whether a plaintiff relator had sufficiently alleged a false or fraudulent claim under the federal False Claims Act ("FCA") to survive a motion to dismiss under Rule 12(b)(6).  According to the complaint, the defendant, a medical device company, had "knowingly caused hospitals and physicians to submit materially false or fraudulent claims" for reimbursement to Medicare by paying kickbacks to physicians.  647 F.3d at 378.  Although the claims on their face did not contain a false representation that no kickbacks had been paid, the medical provider agreement signed by physicians and hospitals, and the hospital cost report signed by hospitals made clear that when those entities submitted claims for Medicare payment, they represented that transactions underlying the claims did not involve kickbacks prohibited by the federal Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b.  Id. at 392-94.  The First Circuit held: "These two documents are more than specific enough to make clear that the claims submitted by *hospitals* represented that any underlying transactions had not involved third party kickbacks prohibited by the AKS. . . .  The Provider Agreement is also sufficiently clear to establish that the claims submitted by *physicians* represented that the underlying transactions did not involve kickbacks to physicians prohibited by the AKS."  Id. at 393.  Thus, these false

representations were "sufficient to state a claim that the hospital and physician claims for payment at issue here were false or fraudulent."  Id.

In Westmoreland, the First Circuit extended its decision in Hutcheson to seven state FCA claims.  Similarly, the plaintiffs alleged that, by paying kickbacks to induce medical providers to prescribe a drug to treat anemia, the defendants--a pharmaceutical company, a group drug purchasing organization, and a wholesale drug distributor--"knowingly caused the providers to submit false or fraudulent claims for Medicaid payment in violation of the state FCAs."  2011 WL 2937420, at *3.  Following Hutcheson, the Court analyzed "whether claims submitted to the seven state Medicaid programs misrepresented compliance with a material precondition of payment recognized by those particular programs."  Id. at *6.  The First Circuit reversed the district court's dismissal of the plaintiffs' claims under six of the seven state FCAs.  In four states, "statutes and regulations make clear that the kickbacks alleged in this case preclude Medicaid payment."  Id. at *7.  In two additional states, "provider agreements . . . make clear that claims submitted to the Medicaid programs . . . may not be paid if they are influenced by kickbacks like those alleged in this litigation."  Id. at *6.  The First Circuit affirmed the dismissal of claims under the seventh state's FCA because the plaintiff had not "identified any materials that make clear that claims affected by kickbacks may

violate a precondition of payment under the state's Medicaid program." Id. at *10.

The Commonwealth argues that this appellate caselaw undermines this Court's ruling disposing of its MFCA Prong 1 claim.  First, quoting the Supreme Court's decision in United States ex rel. Marcus v. Hess, the Commonwealth contends that Hutcheson confirms that claims may be "false or fraudulent" under Prong 1 even if they are not false on their face, as long as they are "grounded in fraud."  Hess, 317 U.S. 537, 544 (1943) (involving claims based on a price rigging conspiracy).

While Hutcheson does support the contention that claims can be false or fraudulent even if not false on their face, the claims submitted to the government must still include false representations, either express or implied.  Hutcheson does not overrule United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 225 (1st Cir. 2004) which held: "Not all fraudulent conduct gives rise to liability under the FCA. [T]he statute attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the claim for payment." (internal citations and quotations marks omitted).  The touchstone must still be a false claim.

Here the pharmacists' claims were factually false because the reported Usual and Customary prices (different pricing benchmarks from WACS) were inaccurate, but defendants had "no role in causing that independent falsehood."  Schering-Plough

Corp., 2011 WL 1575198, at *6. The independently false representations made by defendants--the false WACs--were not presented to MassHealth with the pharmacists' claims and the pharmacists had never made any representations about WACS. Instead, the WACs were published in First DataBank and, subsequently, were one of four prices contained in the state's regulatory pricing file used to determine the reimbursement price. Id. at *4. Therefore, under Prong 1, defendant is not liable for causing the submission of a false or fraudulent claim based on the WAC unless the Court determines the regulatory pricing file to be part of the claim presented to the government by the pharmacist. The Court has already considered and rejected this argument by the Commonwealth, and nothing in Hutcheson or Westmoreland affects the Court's previous factual ruling.

## IV. ORDER

The Court **DENIES** the Commonwealth's Motion to Alter Judgment (Docket No. 981).

      /s/ PATTI B. SARIS  
      PATTI B. SARIS  
      United States District Judge